April 19, 1909.

———————o———————

## No. 4719.

### Court of Appeal, Parish of Orleans.

### C. CENTANNI ET AL V.S. KENNER ICE AND COLD STORAGE CO.

Questions of fact alone are involved herein, and the issues are determined not on the credibility of witnesses, but upon the appreciation of the evidence.

Appeal from 28th Judicial District Court, Parish of Jefferson.

F. A. Middleton, for Plaintiff and Appellee.

E. A. O'Sullivan, for Defendant and Appellant.

ESTOPINAL, J. Alleging the existence of a yearly contract of employment at the rate of seventy-five dollars ($75.00) a month, plaintiff seeks to recover of defendant the salary for one year under said alleged contract, or nine hundred dollars ($900.00), averring in his petition that the defendant agreed to employ him as engineer in their ice plant, but thereafter refused to carry out its agreement and employed another man to do the work for which he (plaintiff) was employed.

Defendant first tendering the general issue, answering specifically that it did not enter into a yearly contract with plaintiff, and that if there was a contract at all, it was one of employment by the month. The defendant further answered that it was anxious to employ the plaintiff, and did give him employment pending the operation of the plant, etc.

The judgment of the lower court was in favor of plaintiff, awarding him four hundred and fifty dollars ($450.00), "the amount of six months' salary."

From this judgment the defendant has appealed.

Our appreciation of the testimony leads us to the conclu-

sions that there never existed any fixed contract of employment between the plaintiff and defendant.

It will be noted that the suit is predicated on a contract of employment which was to begin when the defendant's ice plant began operations, plaintiff to be employed as chief engineer at the rate of seventy-five dollars ($75.00) a month, and yet the plaintiff in his testimony on cross-examination narrates his difference with the defendant in such a manner as to lead unavoidably to the conclusion that the claim for a year's salary was an afterthought.

In the first place he pretended that he took stock in the company on the condition that they should employ him as chief engineer at seventy-five dollars ($75.00) a month. On this theory he need not have limited himself to a claim for one year, but might, on the ground that the defendant had continuously violated the agreement to employ him, have sued for the entire period during which the defendants operated their plant. There is, however, no proof of any such agreement to be found in the record, the real contract being made clear by the plaintiff himself when examined as a witness, and his testimony is so clearly decisive of the cause, that we quote it as follows:

"I don't remember exactly when the erecting engineer met me, and says next Monday or the week after that we are going to start erecting the plant, and he told me that the would like to go to work right away, the thing being delayed so long. I said, all right. I met Mr. Snickenberge and I told him about it, and when we had our meeting and Mr. Snickenberge he said, when we start our plant I think it would be good to employ one of our men, he is a stockholder. That man told me that he had a good friend of his, he wanted to put him to work, but I would rather employ one of our men, and he said, I will make a motion to pay him $2.50 a day and if he don't work, he don't get nothing, and I accepted that. When I started to go to work the engineer agreed to buy the pipe in my tank. Well, it took one week two men to do all the work besides some other kind of things. The next Monday Mr. Snickenberge, he called me to one side and told me he cannot pay two men $2.50 a day, but I am willing to pay you $1.75 a day, I said I wouldn't work for that price, and I took my overalls and went home."

Plaintiff further testifying that he had worked one week and that his wages were paid him by the defendant, and that he made no complaint or demand at the time that the plant was finally completed and operations were begun, but that he did not present himself at the factory to undertake the work for which he pretends he was engaged, nor did he make any demand on defendant at the inception of the plant's operation to be employed, in other words, put it in default, but that about two months after the plant was in operation he had his attorney make a demand for him.

There was evidently some talk of employing the plaintiff as engineer at a fixed salary of seventy-five dollars ($75.00) a month, but this record fails to show a positive contract to that effect, but what the record does show (plaintiff's testimony) is, that he was employed at the very inception of the construction work on the plant at the rate of two dollars and fifty cents ($2.50) a day, and that he accepted, and that when, a week later, it was attempted to lower his wages to one dollar and seventy-five cents ($1.75) a day, he refused to work and quit. Months later he resurrects an intangible story of a contract so indeterminate in every particular and supported by such unsatisfactory proof as to preclude every legal right to recover

Plaintiff in the first place does not come into court with clean hands. He admits he at no time presented himself to proffer his services to defendant. He was a stockholder in the company, lived in the small town where the plant was erected and presumably saw it every day. He does not pretend that he had been told that he would not be employed as chief engineer of the finished plant. Why did he not report for work? The reason is perfectly obvious to us. He now endeavors to differentiate his employment, but at the time he worked in constructing the plant at two dollars and fifty cents ($2.50), and quit when it was attempted to reduce his wages; he accepted the wages earned and considered his employment at an end, giving then, no thought to the chief engineership of the going plant. The steps taken through an attorney long after the plant was in operation to recover a year's salary, was purely an afterthought.

The judgment of the District Court was error.

It is now ordered, adjudged and decreed, that the judg-

—310—

ment appealed from be avoided, reversed and set aside, and it is now ordered that there be judgment in favor of defendant, dismissing plaintiff's suit with costs in both courts.

Reversed.